UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIX RAMON BAUTISTA-ROSARIO, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>STEVEN T. MNUCHIN<br>Secretary of the Treasury, et al.,<br><br>*Defendants*. | Civil Action No. 1:20-cv-2782 (CJN) |

## MEMORANDUM OPINION

Felix Ramon Bautista-Rosario is a Senator of the Dominican Republic. He and several members of his family challenge their public designations under Section 7031(c) of the Department of State Foreign Operations, and Related Programs Appropriations Act, and Bautista-Rosario challenges his designation by the Department of the Treasury's Office of Foreign Assets Control pursuant to Executive Order 13818. *See generally* Compl., ECF No. 1; Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2018 (Pub. L. 115-141, Div. K., 132 Stat. 348 (Mar. 23, 2018)) ("Section 7031(c)"). Defendants move to dismiss Counts I–IV—the claims directed exclusively at State Department actions—arguing that the Court lacks subject-matter jurisdiction and Plaintiffs fail to state claims upon which relief may be granted. *See* Defs.' Partial Mot. to Dismiss, ECF No. 11. The Court agrees and thus grants Defendants' Partial Motion to Dismiss in full.

### I.   Background

Section 7031(c) provides that the Secretary of State, upon "credible information" of involvement in "significant corruption" or "a gross violation of human rights," must publicly or

1

privately designate officials of foreign governments and their immediate families as ineligible for entry into the United States. *See* Section 7031(c)(1)(A)–(B). An individual designated under Section 7031(c)(1)(B) is generally ineligible for a visa or entry into the United States. *See* Section 7031(c)(1)–(2). Since Section 7031(c)'s 2008 enactment, the Secretary has publicly designated more than 200 officials and their family members as ineligible for entry into the United States under the provision.[1]

Prior to 2017, Bautista-Rosario regularly visited the United States for personal and professional reasons, including to "campaign among the Dominican diaspora" and to "pursue business interests and charitable efforts." *See* Compl. ¶ 13. Likewise, his family members also regularly visited the United States. *See id.* ¶¶ 14–21. For example, his wife alleges that she has visited the United States on occasion to manage her Florida property, and others have attended school or visited family in the States. *See id.* But on or about June 2, 2017, Bautista-Rosario and some of his family had their U.S. visas revoked. *See id.* ¶ 1.

In June 2018, the Department of State publicly designated Bautista-Rosario and several of his family members (none of whom allege American citizenship) as ineligible for entry into the United States under Section 7031(c). *Id.* ¶ 3. In its public statement, the State Department noted that the designation was justified "due to [Bautista-Rosario's] involvement in significant corruption," but did not elaborate.[2] On the same day, the Treasury Department's Office of Foreign

---

[1] *See* U.S. Department of State, Corruption-Related Designations – Bureau of International Narcotics and Law Enforcement Affairs, *available at* https://state.gov/corruption-related-designations-bureau-of-international-narcotics-and-law-enforcement-affairs/.

[2] Department of State, Media Note, June 12, 2018, *available at* https://2017-2021.state.gov/public-designation-of-dominican-republic-senator-felix-bautista-under-the-fy-2018-department-of-state-foreign-operations-and-related-programs-appropriations-act-div-k-p-l-115-141/index.html.

Assets Control sanctioned Bautista-Rosario pursuant to Executive Order 13818 for "profiting off of humanitarian efforts related to rebuilding Haiti."[3]  *See id.* ¶ 4.

In September 2020, Senator Bautista and several of his family members[4] filed this suit, advancing four claims exclusively against actions taken by the State Department and six against actions of the Treasury Department or both Departments.  Plaintiffs assert they "are without any information concerning the substance of the allegations against them" *see* Compl. ¶ 7, vigorously dispute the allegations of corruption, and allege the Defendants have become "unwitting participa[nts]" in a "malicious campaign" orchestrated by Bautista-Rosario's political enemies in the Dominican Republic "to damage" his reputation.  Compl. ¶ 1.

Defendants move to dismiss the four claims directed exclusively toward the actions of the State Department.

## II.   Legal Standard

The Court must dismiss any claim over which it lacks subject matter jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has [subject-matter] jurisdiction[.]") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). Plaintiffs bears the burden of demonstrating that such jurisdiction exists. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  In considering a motion to dismiss, the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences from those facts in Plaintiffs'

---

[3]   Treasury Department, Press Release, June 12, 2018, *available at* https://home.treasury.gov/news/press-releases/sm0411.

[4] The complaint implies, but does not directly allege, that all of Bautista-Rosario's family members listed as Plaintiffs are the same family members the State Department designated as ineligible for entry under Section 7031(c).

favor. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). But the Court "do[es] not assume the truth of legal conclusions, nor do[es it] accept inferences that are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19 (internal quotation marks and citation omitted).

A motion to dismiss for failure to state a claim will be granted unless the Complaint contains, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In other words, the Complaint must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Again, at the motion to dismiss stage, the Court must accept all facts alleged in the Complaint as true and draw all reasonable inferences from those facts in Plaintiffs' favor. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018). But Plaintiffs' obligation to state the grounds of their claims "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining a district court need not need accept legal conclusions set forth in the Complaint).

### III.   Analysis
#### A.   Count I

Bautista-Rosario claims in Count One that the Secretary's decision to designate him and his family members as ineligible for entry into the United States under Section 7031(c) was arbitrary and capricious, violating the APA, 5 U.S.C. § 706. *See* Compl. ¶¶ 38–42. The government argues that this claim is nonjusticiable because, in the immigration context, Congress must affirmatively authorize judicial review and it has not done so—whether through Section 7031(c) or the APA. The Court agrees.

The Supreme Court has long held that Congress and the Executive control "the admission and exclusion of foreign nationals." *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018).  And that control is largely—even presumptively—immune from judicial oversight.  *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).  The Supreme Court has reasoned that immigration policy and decisions to admit or exclude aliens are inherently political, implicating "the conduct of foreign relations, the war power, and the maintenance of a republican form of government."  *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952).  Courts are neither well-structured nor authorized to make such policies, and thus it is well-established that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."  *Knauff*, 338 U.S. at 543; *see also Kerry v. Din*, 576 U.S 86, 86–87 (2015).  Absent such affirmative congressional authorization, judicial review of an alien's exclusion is ordinarily unavailable.

As a general matter, Congress has not authorized judicial review of visa denials, *see, e.g.*, 6 U.S.C. § 236(f) ("Nothing in this section shall be construed to create or authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."), nor visa revocations for aliens abroad, *see* 8 U.S.C. § 1201(i) ("[T]he consular officer or the Secretary of State may at any time, in his discretion, revoke" a visa and "[t]here shall be no means of judicial review . . . of a revocation under this subsection.").[5]  And while Section 7031(c) designations are not merely visa denials or revocations, Plaintiffs have pointed to no other statute specifically authorizing judicial review of the designations.

---

[5] 8 U.S.C. § 1201(i) does not prohibit judicial review for some aliens physically present in the United States. But that narrow exception is inapplicable here.

Plaintiffs nonetheless argue that the Court may review their Section 7031(c) designations under the APA. *See* Compl. ¶¶ 38–42. Under the APA, judicial review of agency action is the norm. *See, e.g.*, 5 U.S.C. §702; *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993). But by its own terms the APA does not apply "to the extent that . . . [other] statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The Supreme Court has interpreted this preclusion broadly, concluding that a statute may preclude APA review "not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984); *see also Sackett v. EPA*, 566 U.S. 120, 128 (2012).

Here, APA review is precluded because of the statutory scheme and the nature of the administrative action. No statutory presumption specifically identifies Section 7031(c) designations and expressly exempts them from the APA. But Congress has expressly prohibited judicial review of visa denials and revocations—actions with much the same effect as Section 7031(c) designations. And the presumption of non-reviewability of alien exclusion determinations is well-established. Just as the Court of Appeals has "infer[red] that the immigration laws preclude judicial review of consular visa decisions" under the APA, *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999), so too this Court concludes the immigration laws preclude judicial review of Section 7031(c) designations. [6]

---

[6] There are also good reasons to think the APA does not displace pre-existing non-statutory limitations on or presumptions against judicial review like the doctrine of consular non-reviewability. As the Court of Appeals has noted, Section 702—from which the APA's presumption of reviewability springs—contains a limitation that "Nothing herein [] affects other limitations on judicial review," and courts have suggested that limitation would include matters relating to foreign affairs. *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999).

### B.     Count II

Plaintiffs allege in Count Two that the State Department failed to provide sufficient notice of the Secretary's Section 7031(c) designations, violating Plaintiffs' due process rights under the Fifth Amendment. Compl. ¶¶ 43–51. Defendants contend that Plaintiffs, being nonresident aliens, have no such constitutional rights.

"[N]on-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections." *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004); *see also Johnson v. Eisentrager*, 339 U.S. 763, 770–71 (1950). Fifth Amendment protections do attach when aliens "have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271–73 (1990). Precisely what duration of presence and extent of contacts is sufficient is hardly clear, but the question turns, at least in part, on whether the contacts have led to the acceptance of societal obligations from presence in the United States. *Id.* at 273. The Court of Appeals has set out some goalposts: current physical presence and owning property can be enough, *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 201–02 (D.C. Cir. 2001), but having "neither a property interest nor a presence in this country" is insufficient. *32 County Sovereignty Committee v. Department of State*, 292 F.3d 797, 799 (D.C. Cir. 2002); *see also People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999).

Plaintiffs have not alleged sufficient connections such that Fifth Amendment rights attach. Neither Bautista-Rosario nor any other plaintiff alleges U.S. citizenship or current physical presence in the United States. Indeed, all Plaintiffs refer to their lack of valid U.S. visas, suggesting that they are all currently abroad. *See* Compl. ¶¶ 14, 16–17, 20–21. Plaintiffs' presence-related allegations all appear to have been in the past, such as Bautista-Rosario's political campaigns, charitable activities, or several Plaintiffs' educations.

The Complaint does briefly note that one Plaintiff, "Ms. Rojas[,] owns real estate in Miami, Florida."[7] *Id.* ¶ 14. Rojas does not allege she is physically present here. Whether or not Rojas has some constitutional rights relating to her property, it is clear "foreign nationals seeking admission have no constitutional right to entry[.]" *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018); *see also Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). Because Section 7031(c) designations directly affect one's ability to get a visa, it is just a brief step further to conclude, as the Court now does, that Rojas does not have a constitutional right with respect to her Section 7031(c) designation.

Plaintiff Felix Ramon Bautista-Abreu alleges that he is married to a U.S. citizen. But the Complaint states that his petition for permanent residency has not yet been fully adjudicated.[8] So, as the Complaint stands, Felix Ramon Bautista-Abreu does not have any constitutional protections that would be afforded to permanent residents. *See* Compl. ¶ 15.

Even if Plaintiffs had applicable constitutional rights, they fail to allege a deprivation of a cognizable interest. The Fifth Amendment's Due Process Clause provides that individuals may not have their "life, liberty, or property" deprived without due process of law. Therefore, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.,* 758 F.3d 296, 315 (D.C. Cir. 2014) (citation omitted). Plaintiffs have not alleged such a deprivation. The

---

[7] Plaintiffs' opposition to the motion to dismiss asserts that Rojas is the owner of a rental property in Miami, Florida, pays taxes on it, and her presence from time to time is necessary for repairing and renting the property. *See* Plaintiff's Response to Defendant's Partial Motion to Dismiss ("Resp."), at 5, ECF 16-1.

[8] Felix Ramon Bautista-Abreu's spouse, a United States citizen, may have a constitutionally-protected interest related to his ability to get a visa. And Plaintiffs do have other family members that reside in the United States who might have a constitutionally-protected interest at stake. Resp. at 5; *see Hawaii*, 138 S. Ct. at 2419 (noting the existence of a judicial inquiry, albeit "circumscribed," "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen."). But Plaintiffs do not allege such burdens.

Court of Appeals has explained that initial entrants, such as non-permanent residents, have "no liberty (or other) interest in entering the United States, and thus has no constitutional right to any process in that context[.]" *Rafeedie v. I.N.S.*, 880 F.2d 506, 512 (D.C. Cir. 1989); *see also Doe v. Pompeo*, 451 F. Supp. 3d 100, 110 (D.D.C. 2020) ("[T]he Government can afford whatever process it wants to an initial entrant, including no process at all.").

In short, Plaintiffs lack sufficient ties to the United States to assert constitutional rights, and even if they had sufficient ties, they fail to show that they have been deprived of a cognizable interest.

### C.     Count III

Plaintiffs allege that no mechanism by which they could challenge their Section 7031(c) designation was publicly indicated to them.  *See* Compl. ¶¶ 52–58.  This, they argue, is in violation of 5 U.S.C. § 552(a)(1), which requires agencies to identify places, people, and methods by which members of the public can obtain information, "including the nature and requirements of all formal and informal procedures available."  5 U.S.C. §§ 552(a)(1)(A)–(B).  Defendants contend that this statute only requires the public disclosure of *available* procedures.  Here, Defendants argue, there are no available—or required—procedures to contest Section 7031(c) designations, so there is no violation of 5 U.S.C. § 552.  The Court agrees; in any event, the Plaintiffs have conceded the argument.

Plaintiffs are correct that agencies, including the State Department, must publicize information on their procedures, both formal and informal.  This means that if the State Department had either a formal or informal policy regarding the reconsideration of Section 7031(c)

9

designations, the Department would generally be required to provide guidance to the public on that procedure.

The problem is that no such procedure exists. Section 7031(c) neither requires nor contemplates a process by which designees could challenge their status. Nor have Plaintiffs identified another statute or regulation that creates or even implies the existence of a formal or informal reconsideration process for Section 7031(c) designations. Given no such procedure exists, the State Department cannot have violated 5 U.S.C. § 552 as alleged.

Moreover, Plaintiffs never addressed the arguments presented by Defendants. "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *See, e.g.*, *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012) (quotation omitted); *see also Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir.1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule."). This Court considers the arguments conceded.

### D.   Count IV

Plaintiffs also allege that the State Department failed to comply with its obligations under Section 7031(c)(4)–(6) because it did not file a mandatory report. *See* Compl. ¶¶ 59–61. Section 7031(c) requires the Secretary of State to submit a report to Congress describing the information related to corruption or human rights violations of each individual found ineligible in the previous 12 months. Any unclassified portion of the report must be posted on the State Department's website. Defendants contend that the State Department did issue the report,[9] and, regardless,

---

[9] *See* U.S. Dep't of State, Report to Congress on Anti-Kleptocracy and Human Rights Visa Restrictions (Dec. 10, 2018), *formerly available at* https://state.gov/report-to-congress-on-anti-

Plaintiffs have not alleged a cause of action nor a cognizable injury. The Court largely agrees with Defendants, and, again, Plaintiffs have conceded the arguments.

In ruling on a motion to dismiss, courts primarily consider the allegations in the complaint. A motion to dismiss bolstered by extrinsic evidence generally must be converted into a motion for summary judgment. But courts may take judicial notice of matters not subject to reasonable dispute. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, (2007); *see also* Fed. R. Evid. 201. The report proffered by Defendants appears to be a proper subject of judicial notice for the limited purpose of demonstrating that the State Department did publish the report. Indeed, its authenticity may be so beyond dispute that Plaintiffs deliberately conceded the argument by failing to respond.

Plaintiffs also conceded Defendants' arguments that, even if the State Department had not published or submitted the report, relief cannot be granted because Plaintiffs did not specify a cause of action or cognizable injury.

### IV.   Conclusion

Because Plaintiffs have not adequately alleged subject-matter jurisdiction as to Count I, nor a claim upon which relief can be granted as to Counts II, III, and IV, Defendants' Partial Motion to Dismiss is **GRANTED**, and Counts I–IV of the Complaint are dismissed without prejudice. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  September 22, 2021

CARL J. NICHOLS
United States District Judge

---

kleptocracy-and-human-rights-visa-restrictions-2/; *see also* U.S. Dep't of State, Report to Congress on Anti-Kleptocracy and Human Rights Visa Restrictions: Public Listing, Fiscal Year 2018, *available at* https://www.state.gov/reports/report-to-congress-on-anti-kleptocracy-and-human-rights-visa-restrictions-public-listing/public-listing-fiscal-year-2018/.